UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 01-55-01ML |
| | : | |
| KAI JACKSON | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether the Defendant is in violation of the terms of his supervised release and, if so, to recommend a disposition of this matter. In compliance with that directive and in accordance with 18 U.S.C. § 3583(e) and Fed. R. Crim. P. 32.1, a preliminary hearing was held on December 7, 2005 and a subsequent revocation hearing on December 9, 2005, at which time Defendant, through counsel and personally, admitted that he was in violation of his supervised release conditions as to the charged violations. At the hearing, I ordered Defendant detained pending my Report and Recommendation and final sentencing before District Judge Mary M. Lisi. Based upon the following analysis and the admission of Defendant, **I recommend that the Defendant be committed to the Bureau of Prisons for a term of eight (8) months of incarceration, followed by a term of supervised release for a period of twenty-eight (28) months. I further recommend that, while on supervised release, Defendant participate in an outpatient or inpatient substance abuse treatment program as approved by the United States**

**Probation Officer, submit up to seventy-two (72) urine specimens per year as approved by the Probation Office and abstain from the use of alcohol and/or intoxicants.**

**Background**

On November 29, 2005, the Probation Office petitioned the Court for the issuance of a Warrant for Defendant's arrest. On November 30, 2005, the District Court reviewed the request and ordered the issuance of a Warrant. Defendant was arrested and appeared in Court for an initial appearance on December 7, 2005. A subsequent hearing was held, and on December 9, 2005, Defendant knowingly and voluntarily admitted to the following charges[1] and waived his right to a revocation hearing under Fed. R. Crim. P. 32.1(b)(2):

> **The defendant shall refrain from any unlawful use of a controlled substance.**
>
> Mr. Jackson used marihuana as evidenced by his April 22, 2004, June 28, 2004, June 27, 2005, and October 17, 2005 positive urine screens and admissions.
>
> **The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month.**
>
> Mr. Jackson failed to submit his January 2005 monthly supervision report by February 5, 2005; his February 2005 monthly supervision report by March 5, 2005; his April 2005 monthly supervision report by May 5, 2005; his May 2005 monthly supervision report by June 5, 2005; his June 2005 monthly supervision report by July 5, 2005; his July 2005 monthly supervision report by August 5, 2005; his August 2005 monthly supervision report by September 5, 2005; his

[1] Defendant was charged with an additional violation related to a recent charge of disorderly conduct which is pending in state court. At the revocation hearing, the Government dismissed this violation from the case prior to Defendant's admissions. This dismissal was apparently the result of a pre-hearing "plea" arrangement between Defendant and the Government.

September 2005 monthly supervision report by October 5, 2005; and his October 2005 monthly supervision report by November 5, 2005.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. Jackson has failed to seek out employment as directed by USPO David S. Borrelli on June 27, 2005 and October 17, 2005.

**The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.**

Mr. Jackson failed to report to the Probation Department in accordance with the Random Urinalysis Color Code Urinalysis Program on July 7, 2005 and November 14, 2005 as directed by USPO David S. Borrelli on June 27, 2005 and October 17, 2005.

**The defendant shall notify the probation officer at least ten days prior to any change in employment.**

Mr. Jackson failed to notify USPO David S. Borrelli that he was fired from Wendy's, Cranston, Rhode Island prior to June 23, 2005, and that he had discontinued working full-time at Jerry's Auto Repair, Providence, Rhode Island prior to September 21, 2005.

**The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.**

Mr. Jackson failed to notify USPO David S. Borrelli of his contact with the Pawtucket, Rhode Island Police Department on October 19, 2005.

**The defendant shall participate in an outpatient program approved by the Probation Office for substance abuse, which program may include testing to determine whether the defendant has reverted to the use of drugs or alcohol.**

> On November 15, 2005, Mr. Jackson was discharged from outpatient substance abuse treatment from the Phoenix House, Providence, Rhode Island, after failing to meet treatment objectives.
>
> **The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.**
>
> Mr. Jackson failed to notify USPO David S. Borrelli of his November 13, 2005 arrest for Domestic-Disorderly Conduct and Disorderly Conduct.

As the Defendant has admitted these charges, I find he is in violation of the terms and conditions of his supervised release.

**Recommended Disposition**

Section 3583(e)(2), 18 U.S.C., provides that if the Court finds that Defendant violated a condition of supervised release, the court may extend the term of supervised release if less than the maximum term was previously imposed. In this case, the maximum term of supervised release was previously imposed, therefore, the term cannot be extended.

Section 3583(e)(3), 18 U.S.C., provides that the Court may revoke a term of supervised release and require the Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term or supervised release without credit for time previously served on post release supervision, if the Court finds by a preponderance of evidence that the defendant has violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be sentenced to a term beyond 5 years if the instant offense was a Class A felony, 3 years for a Class B felony, 2 years for a Class C or D felony, or 1 year for a Class E felony or a misdemeanor. If a term of imprisonment was imposed as a result

of a previous supervised release revocation, that term of imprisonment must be subtracted from the above-stated maximums to arrive at the current remaining statutory maximum sentence. In this case, Defendant was on supervision for a Class C felony. Therefore, he may not be required to serve more than two years' imprisonment upon revocation.

Pursuant to 18 U.S.C. § 3583(h) and § 7B1.3(g)(2), when a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized, the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release. In this case, the authorized statutory maximum term of supervised release is three years. There has not been any term of imprisonment previously imposed for violations of supervised release. Therefore, the Court may impose the above-noted statutory maximum, minus the term of imprisonment that is to be imposed for this revocation.

Section 7B1.1 provides for three grades of violations (A, B, and C). Subsection (b) states that where there is more than one violation, or the violation includes more than one offense, the grade of violation is determined by the violation having the most serious grade.

Section 7B1.1(a) notes that a Grade A violation constitutes conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or any other offense punishable by a term of imprisonment exceeding twenty years. Grade B violations are conduct

constituting any other offense punishable by a term of imprisonment exceeding one year. Grade C violations are conduct constituting an offense punishable by a term of imprisonment of one year or less; or a violation of any other condition of supervision.

Section 7B1.3(a)(1) states that upon a finding of a Grade A or B violation, the Court shall revoke supervision. Subsection (a)(2) provides that upon a finding of a Grade C violation, the court may revoke, extend, or modify the conditions of supervision. In this case, Defendant has committed Grade C violations. Therefore, the Court may revoke or modify the conditions of supervision.

Section 7B1.3(c)(1) provides that where the minimum term of imprisonment determined under § 7B1.4 is at least one month, but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in § 5C1.1(e) for any portion of the minimum term. Should the Court find that Defendant has committed a Grade B or C violation, § 7B1.3(c)(2) states that where the minimum term of imprisonment determined under § 7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. Neither provisions apply in this case.

Section 7B1.3(d) states that any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or

served in addition to the sanction determined under § 7B1.4 (Term of Imprisonment), and any such unserved period of confinement or detention may be converted to an equivalent period of imprisonment. In this case, there is no outstanding restitution, fine, community confinement, home detention or intermittent confinement.

Section 7B1.4(a) of the USSG provides that the criminal history category is the category applicable at the time Defendant originally was sentenced. In this instance, Defendant had a criminal history category of IV at the time of sentencing.

Should the Court revoke supervised release, the Revocation Table provided for in § 7B1.4(a) provides the applicable imprisonment range. In this case, Defendant committed Grade C violations and has a Criminal History Category of IV. Therefore, the applicable range of imprisonment for this violation is six to twelve months.

Section 7B1.5(b) of the USSG provides that, upon revocation of supervised release, no credit shall be given toward any term of imprisonment ordered, for time previously served on post-release supervision.

**Offender's Characteristics**

This case arises from Defendant's conviction following a plea of guilty to the offense of domestic violence misdemeanant in possession of two firearms. On March 25, 2002, Defendant was sentenced to twenty-four months' incarceration to be followed by thirty-six months' supervised release with special conditions. Defendant's current period of supervised release commenced on December 24, 2003.

At the hearing, the Government argued that a mid-range sentence of nine months was appropriate in view of Defendant's chronic and continuing violations of the most basic terms of his supervised release. The Government argued that such incarceration should be followed by an additional term of twenty-seven months of supervised release with special conditions related to substance abuse treatment and testing. Defendant's counsel did not contest this proposed recommendation as unreasonable and Defendant chose not to speak on his own behalf at the hearing.

Defendant needs a strong wake-up call if he is to have any chance of getting his life back on track. While Defendant has shown some positive progress in obtaining and maintaining full-time employment for periods of time while on supervised release, Defendant has not taken full advantage of these opportunities. As to one of these jobs, it was reported to Defendant's Probation Officer that Defendant was fired for chronically reporting to work late and failing to report for scheduled work hours. It is apparent that Defendant has not taken his supervised release conditions seriously and has violated the most basic terms of his supervised release. For instance, Defendant has tested positive on several occasions for marihuana use and on other occasions failed to report for required drug testing. Defendant admitted to chronic lateness in submitting his monthly supervision reports and to being discharged from an outpatient substance abuse treatment program based on his continued drug use and his unreliability in attending both individual and group counseling. Most significantly, Defendant admitted to failing to keep his Probation Officer advised as to changes in his employment status and also failing to notifying his Probation Officer of law enforcement contacts. As explained to Defendant at the revocation hearing, Defendant's Probation Officer is an arm of this Court and failing to provide information to his Probation Officer in a truthful and timely fashion is the same

as failing to be truthful with the District Court. Defendant is reminded that his period of supervised release is both part of the punishment for his original conviction in this Court and also a mechanism intended to assist Defendant in putting this conviction behind him. Defendant's failure to participate in drug treatment and to cooperate with his Probation Officer will simply not be tolerated by this Court and will only lead Defendant into further trouble.

Given the nature of the violations, this Court agrees that the Government's mid-range recommendation of nine months is reasonable. However, since the Defendant admitted to the violations and was willing to accept responsibility for his violations, this Court will give him credit for that fact and will recommend an eight-month sentence of incarceration for this set of violations as well as an additional term of supervised release of twenty-eight months with special conditions related to substance abuse treatment and testing. It is hoped that such a sentence will send a wake-up call to Defendant and he will successfully complete his remaining period of supervised release following incarceration.

**Conclusion**

After considering the various factors set forth in 18 U.S.C. § 3553(a), **I recommend that the Defendant be committed to the Bureau of Prisons for a term of eight (8) months of incarceration, followed by a term of supervised release for a period of twenty-eight (28) months. I further recommend that, while on supervised release, Defendant participate in an outpatient or inpatient substance abuse treatment program as approved by the United States Probation Officer, submit up to seventy-two (72) urine specimens per year as approved by the Probation Office and abstain from the use of alcohol and/or intoxicants.**

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. Rule 32, Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to file specific objections in a timely manner constitutes a waiver of the right to review by the District Court and the right to appeal the District Court's Decision. United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
December 12, 2005